Eugene Burdick FORTSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–97–0134–CR.

Court of Appeals of Texas,
Amarillo.

June 25, 1997.

R.J. Hagood, Denison, for appellant.

Robert T. Jarvis, County Attorney, Cheryl Brewer Simmons, Assistant County Attorney, Sherman, for appellee.

Before BOYD, C.J., and DODSON, J., and REYNOLDS, Senior Justice.*

BOYD, Chief Justice.

In four points of error, appellant Eugene Burdick Fortson challenges his conviction of driving while intoxicated and the resulting punishment, assessed by the court, of thirty (30) days confinement in the Grayson County Jail, probated for one year, and a $500 fine. In his points, he contends the trial court erred in 1) entering a purported nunc pro tunc order setting aside a previous order in arrest of judgment; 2) refusing to set aside his motion to dismiss "AFTER THE JURY HAD BEEN SWORN AND THE INFORMATION UPON THE STATE WAS PROCEEDING TO TRIAL HAD NOT BEEN

---

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 1997).

PROPERLY AMENDED;" 3) not allowing him ten days to prepare for trial after "THE STATE PROPOSED AND WAS ALLOWED TO PROCEED UNDER A DIFFERENT INFORMATION THAN WAS ANTICIPATED BY TRIAL COUNSEL;" 4) because there is a fatal variance between the *allegata* and the *probata* requiring reversal. Disagreeing with those challenges, we affirm the judgment of the trial court.

Inasmuch as appellant does not challenge the sufficiency of the evidence, *per se*, we will only discuss those portions of the record which are relevant to this appeal. His first point contention requires us to review the somewhat complicated procedural history of this case. The jury trial was completed and its verdict of guilty returned on December 6, 1995. The punishment hearing before the judge was held and completed on December 20, 1995, with the punishment being assessed as we have shown above. On January 16, 1996, appellant filed his motion to arrest judgment in which he alleged there was insufficient evidence to sustain the conviction. On January 29, 1996, the trial judge signed a judgment carrying into effect the jury's finding of guilt and the court's assessment of punishment. The judge noted on his docket on January 29, 1996, that he was overruling the motion in arrest of judgment; however, the record contains an order also dated January 29, 1996, granting the motion.

On April 17, 1996, the State filed a motion asking for a judgment nunc pro tunc in which it recited that the judge had mistakenly signed the order arresting the judgment which "was a clerical, not judicial, error on the part of the Judge," because it "was signed by inadvertence and mistake along with several other papers." On that same day, the trial judge signed an "AMENDED ORDER" in which he recited that "the Court through a mistake signed an order which arrested and set aside the judgment of conviction which the Court had previously entered only moments before." In the amended order, he set aside the order arresting judgment and provided that "the Court's judgment of conviction is reinstated."

Rule 36 is the only Rule of Appellate Procedure which purports to deal specifically with nunc pro tunc judgments. It provides:

(a) **When Done.** Unless a new trial has been granted, *the judgment arrested*, or an appeal has been taken, failure of the court to enter judgment and pronounce sentence may be corrected at any time by entering judgment and pronouncing sentence.

(b) **Credit.** The trial court shall give the defendant credit on the sentence finally pronounced for all time the defendant has spent in confinement from the time judgment and sentence should have been entered and pronounced.... (Emphasis added).

Other than contending the trial court exceeded its authority in attempting to set aside the order granting his motion in arrest of judgment, appellant does not challenge the procedure by which the matter was handled. Indeed, he does not contest that the trial judge signed the order granting his motion in error. In mounting his challenge, he reasons that a nunc pro tunc order may be appropriate generally in cases in which a judgment or sentence was rendered and pronounced correctly but was not entered in the record, in cases in which the judgment and sentence were not entered into the record, in cases in which proper time credits have not been given, or in cases where the jury has properly made a deadly weapon finding but through error, that finding was not incorporated into a judgment. However, he argues, the setting aside of an arrest of judgment "is clearly not a clerical matter contemplated by the rules, in as much as Rule 36 indicates that the entering of judgment and pronouncement of sentence may not be done after an arrest of judgment." The State, on the other hand, argues that the record, including the trial judge's handwritten notation that he was overruling the motion in arrest of judgment, clearly shows that the signing of the arrest was a clerical error which may be corrected by a judgment nunc pro tunc.

In the seminal case of *State v. Bates*, 889 S.W.2d 306 (Tex.Crim.App.1994), the court had occasion to discuss the effect of Rule 36. In doing so, it noted the rule "vests a trial court with the authority to correct mistakes

or errors in a judgment or order after the expiration of the court's plenary power, via entry of a judgment nunc pro tunc." *Id.* at 309. The court also referenced the established rule that nunc pro tunc orders may be used only to correct clerical errors in which no judicial reasoning contributed to their entry. *Id.*

In making our decision whether the trial court's admittedly mistaken action was clerical or judicial, the court's decision in *English v. State*, 592 S.W.2d 949 (Tex.Crim.App.1980) is instructive. As relevant here, in that case the trial judge had inadvertently signed an order granting the appellant a new trial. Subsequently, the judge recognized his mistake and attempted to set aside the order by writing at the bottom of the order form, "[t]he above order was signed inadvertently and by mistake and the order was not intended to have any legal effect." *Id.* at 955. In discussing the appellant's contention that the trial court assumed authority it did not have in setting aside its order granting a new trial, the appellate court recognized the general rule that after a trial court grants a motion for new trial, it is without authority to subsequently set aside that order and overrule the motion. *Id.* However, the court concluded in the case before it, the record showed the trial judge did not knowingly grant a new trial, and "the court's error in this case does not strike us as a judicial error, as certainly was the case in *Matthews*.[1] *Id.* at 955–56. The error here is more akin to a clerical error, which can be corrected." *Id.* at 956.

Although the *English* case was decided prior to the adoption of the Rules of Appellate Procedure, the continued viability of its rationale is shown by its citation in *Moore v. State*, 749 S.W.2d 54 (Tex.Crim.App.1988). *Moore* was a case in which the court was considering an attempt to rescind an order granting a new trial because of insufficiency of the evidence. The court reiterated the rule that "absent clerical errors, a trial court cannot rescind an order granting a new trial." *Moore*, 749 S.W.2d at 58. In holding the trial court lacked authority to rescind its

order, the *Moore* court specifically noted "[t]here is nothing in the record before us that indicates the trial judge made a clerical error in granting the motions for new trial," and cited the *English* case as evidencing that an order signed by mistake, would be the result of a clerical error subject to correction. *Id.* at 58–59.

 Following the rationale of the *English* case, we hold the trial judge's mistaken act in signing the arrest of judgment order was a clerical mistake subject to correction by a nunc pro tunc judgment. We find nothing in Rule 36 that would prevent the correction of a clerical mistake as contrasted to an attempt to withdraw or change an exercise of judicial discretion. Appellant's first point is overruled.

Discussion of appellant's second and third points requires us to review a bit more of this case's procedural history. In relevant part, the original information, filed on August 16, 1994, charged appellant with the offense of driving while intoxicated on or about August 7, 1994, "... in a public place in Grayson County, to-wit: Texoma Parkway...." On October 12, 1995, the prosecutor filed a motion seeking to amend the information by changing the location allegations to read "... in a public place in Grayson County, to-wit: U.S. 75 Business...." The motion was granted on October 16, 1995, but the change was never physically noted on the information. On December 6, 1995, the case was called for trial, the jury selected and sworn, and the information in its amended form was read to the jury. Defense counsel entered a plea of not guilty on behalf of his client and then moved for a dismissal of the cause because of the failure to physically show the change on the information. After a recess to research the law, the State conceded that the amendment was invalid but requested permission to proceed to trial on the information as originally worded. That permission was granted, the information in its original form was read to the jury, and the case proceeded to trial.

---

1. *Matthews v. State*, 40 Tex.Cr.R. 316, 50 S.W. 368 (1899), a case that stated the hoary rule that after a trial court grants a motion for new trial, it is without authority to subsequently set aside its order and overrule a motion for new trial.

In argument under appellant's second point, he initially notes the rule that jeopardy attaches when a trial jury is empaneled and sworn. Thus, he continues, he was placed in jeopardy when the jury was sworn and the proposed amended information read, and "he should not have been subjected to trial or double jeopardy by allowing the State to proceed under an additional information." The thrust of that contention is, of course, that he had been placed in jeopardy under an information improperly amended, that error could not be cured by proceeding under the original unamended information, and thus, the State could not prosecute him further.

In his third point, appellant argues that because the trial court did not allow the State to proceed on its proposed amended information but did allow trial to proceed on the original information, "he was required to go to trial on basically a 'new information' (and one that the State apparently believed was defective) and that he should have been given ten (10) additional days to prepare for trial." Because the two points are closely related, we will discuss them together.

■ Texas Code of Criminal Procedure Annotated article 28.11 (Vernon 1989) provides that "[a]ll amendments of an indictment or information shall be made with the leave of the court and under its direction." In *Ward v. State*, 829 S.W.2d 787, 793 (Tex. Crim.App.1992), the trial court had occasion to interpret this statute and explained that if the State wishes to amend a pleading, it must first obtain permission of the court. If the court decides the amendment is proper, it may grant the State permission to amend the charging document. *Id.* However, in the words of the court, "[n]either the motion itself nor the trial judge's granting thereof is *the amendment;* rather the two comprise the authorization for the eventual amendment of the charging instrument pursuant to Art. 28.10 (the article prescribing the matter and means of certain permissible amendments). *Id.* The amendment, then, is the actual alteration of the charging instrument." (emphasis in original). *Id.* at 793. *See also Rent v. State*, 838 S.W.2d 548, 551 (Tex.Crim. App.1990) (information not amended until interlineation actually made). Because the information was never actually amended, the trial court did not err in allowing the trial to proceed as it did. Appellant makes no argument that he was unfairly surprised by having to proceed under the original information. Indeed, he concedes that under his argument, "the issue of surprise is irrelevant." It naturally follows that because the trial properly proceeded under the information which was filed far more than ten days prior to its inception, appellant was not entitled to an additional ten days preparation time. Appellant's second and third points are overruled.

In his fourth point, appellant reasons there is a fatal variance between the allegation in the original information (and the one under which the trial was conducted) in that the offense occurred while he was on Texoma Parkway and the evidence "indicated that he was actually on U.S. 75 Business which was called Texoma Parkway and was, at the time of trial, called Highway 91." He concludes that the trial court reversibly erred in instructing the jury that they might convict if they found he committed the offense while on the "Texoma Parkway." We disagree.

■ This complaint is a challenge to the legal sufficiency of the evidence to support the conviction. In viewing such challenges, our task is to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Clewis v. State*, 922 S.W.2d 126, 132 (Tex.Crim.App.1996). A variance must be material and prejudicial to render the evidence insufficient to support a conviction for the offense alleged. In evaluating a variance between the pleading and the proof, the dual purposes of the requirement that pleading and proof correspond must be kept in mind. Those purposes are to put an accused on notice as to the charges against him and to enable him to plead the same in bar of further jeopardy for the same alleged acts. Thus, in order to establish that an alleged variance is material, prejudicial, and hence fatal, an accused must show surprise or that he was misled to his prejudice

by the variance. *Human v. State,* 749 S.W.2d 832, 836–37 (Tex.Crim.App.1988); *Plessinger v. State,* 536 S.W.2d 380 (Tex. Crim.App.1976); *Phillips v. State,* 753 S.W.2d 813, 815 (Tex.App.—Austin 1988, pet. ref'd).

State's witness D.P.S. Trooper Duane Avants testified that the highway in question was U.S. 75 Business, commonly known as Texoma Parkway, "and now it is called Highway Ninety-one." D.P.S. Trooper Merle M. Collins also testified that U.S. Highway 75 Business was also known as Texoma Parkway. Viewed as a whole, the record is sufficient to justify the jury's conclusion that the highway upon which appellant was driving was known as the Texhoma Parkway. Additionally, even though it is appellant's burden to show that he was reversibly harmed by any variance in the name of the highway upon which he was accused of driving while intoxicated, viewed in the light in which we must view it, the record is sufficient to demonstrate that he was not surprised nor materially prejudiced by any variance in the allegations and proof. Appellant's fourth point is overruled.

In sum, all of appellant's points are overruled and the judgment of the trial court is affirmed.