# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00355-CR

**The State of Texas, Appellant**

**v.**

**Jeffrey James Tropp, Appellee**

---

**FROM THE 433RD DISTRICT COURT OF COMAL COUNTY**
**NO. CR2020-860, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

The State of Texas appeals the district court's order granting a new trial to Jeffrey James Tropp. *See* Tex. Code Crim. Proc. art. 44.01(a)(3) (authorizing State's appeal from such orders). The State contends, among other arguments, that Tropp did not establish his entitlement to a new trial because (1) his supplemental and corrected motions for new trial were untimely, (2) his new trial was granted on an ineffective-assistance ground that was unpled, (3) his complaints about not receiving a fair trial or due process because of a juror's dishonesty during voir dire relied on inadmissible hearsay, and (4) he is estopped from complaining about prosecutors' questions and arguments as to evidence that he introduced at trial. We will vacate the "Amended Order Granting New Trial," reinstate the judgment of conviction, and remand this cause to the district court.

# BACKGROUND[1]

The State charged Tropp with sexual assault of a child, sixteen-year-old E.O.[2] *See* Tex. Penal Code § 22.011(a)(2). The jury initially deadlocked but after being instructed to continue deliberations returned a verdict of guilty. After the punishment phase, the jury assessed the two-year minimum sentence and no fine, and recommended Tropp's placement on community supervision. The district court followed the jury's recommendation, suspended the sentence, and placed Tropp on community supervision for three years. Tropp moved for a new trial, contending that prosecutors repeatedly referenced his silence during custodial interrogation, in violation of his Fifth Amendment privilege, and engaged in "*Doyle* violations" by using his silence to impeach an explanation he offered at trial. *See Doyle v. Ohio*, 426 U.S. 610, 617-18 (1976). He argued that prosecutors' references created an inference of guilt in the jurors' minds that contributed to their verdict.[3]

The undisputed evidence at trial showed that after E.O. spent the night at a friend's house, she and three friends went in her Jeep to the Guadalupe River to drink. E.O. took her prescription medication that day, drank hard seltzers and whiskey, and jumped into the river from a tree a couple of times. Also, E.O. and one of her friends engaged in conversation with two adult men, later identified as Tropp and his friend, in the river.

---

[1] We include a brief overview of the trial proceedings for context but focus on the facts relevant to the new-trial orders appealed. *See* Tex. R. App. P. 47.1.

[2] We protect the minor complainant's identity by referring to her using the initials for her pseudonym in the indictment. *See id.* R. 9.10(a)(3).

[3] Tropp received five extensions of time to file his appellee's brief, and we advised him that no further extensions would be granted and that this cause would be submitted on appellant's brief alone. Nevertheless, Tropp filed a sixth motion for extension of time and thirty days later tendered an untimely brief, which we consider in the interest of justice. *See id.* R. 2.

2

The issue at trial was whether Tropp sexually assaulted E.O. with his finger while they were in the water. E.O. reported to health-care staff that someone named "Jeff" or "Jesse" had done so, that she was drugged, that some "college guys" had given her something to drink, and that she was unsure if she had lost consciousness. At trial, E.O. testified that she was not drugged and did not lose consciousness and that neither Tropp nor his friend offered her anything to drink. She told the jury that she saw police cars after walking away from the river and thought she was in trouble for drinking. She recalled that she was trying to get into a college where she could play soccer, and she "knew this wouldn't look good on a record." A patient-care report from a paramedic who assessed E.O. at the scene reported his clinical impressions as "Sexual Assault" and "Overdose - Alcohol."

A fourteen-year-old boy who had been jumping into the river from the same tree as E.O. was the first to report the conduct that led to the charged offense. The boy asked E.O. if she needed "help up" and helped her get back on land. He then reported to his father, E.O.'s friends, and a nearby adult that while he was in the tree he saw a girl (later identified as E.O.) and a man (later identified as Tropp) "trying to go in her pants" with his hand. Before the boy made a statement to police at the scene, he stood close enough to others to hear their statements. He told New Braunfels Police Department Officer Sylvia Martinez that the man he saw with the girl in the river had "one hand in her pants." At trial, the boy testified that the man touched the girl's "front and back," the "front area of her private part," and "under the bikini."

Tropp denied committing the offense. He testified about seeing E.O. floating face down in the water, thinking she would drown, and swimming her to shore. Tropp acknowledged that although "law enforcement gave [him] the opportunity to explain," he did not tell the first police officer at the scene, NBPD Officer Thomas Powell, that E.O. slipped into the river

3

because she was so intoxicated, that her head went under water, and that he had performed a water rescue. Tropp said that he "did not touch" E.O., but he testified that he said this because he was "rattled" and thought the officer meant "touch" in a sexual manner.

All law-enforcement witnesses were called by the defense after the State rested. During the defense's case-in-chief, the jury saw video excerpts—admitted over the State's hearsay objections—from body cameras showing two police officers' interactions at the scene with Tropp, E.O., the boy, and others. The video included Officer Martinez's questioning of Tropp with Officer Powell and another officer nearby. Before that questioning, Officer Martinez told Tropp he was not free to leave and read *Miranda* warnings to him.[4] She testified that she gave the warnings when she first approached him because she had probable cause for his arrest:

Officer Martinez: All right bud, what's your name?

Tropp: Jeffrey Tropp.

Officer Martinez: Jeffrey? All righty Jeffrey, I'm going to read you your rights, ok? I'm Officer Martinez, New Braunfels PD, I'm the officer in charge of all this, ok? You have any questions, you go ahead and ask me, all right?

Tropp: Y'all—y'all are gonna release me, right?

Officer Martinez: You're not free to leave yet, I'm gonna read you your rights, okay?

Tropp: Ok.

Officer Martinez then read *Miranda* rights to Tropp, who confirmed he understood them and said he had been swimming in the river but did not discuss any interaction with E.O.:

---

[4] *See Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966) (requiring that law-enforcement officers wanting to question person who has been taken into custody or deprived of their freedom in any significant way by authorities must first warn that person of certain constitutionally protected rights securing person's Fifth Amendment privilege against self-incrimination).

4

Officer Martinez: Ok, perfect. With those rights read to you, do you voluntarily waive your rights to speak with me regarding what happened today?

Tropp: Voluntarily waive—

Officer Martinez: Voluntarily waive your rights to speak with me about what happened today?

Tropp: Nothing happened today.

Officer Martinez: Ok. I can't—Do you voluntarily waive your rights to speak with me about what happened today, s[o] I can get your side of the story?

Tropp: Sure.

Officer Martinez: Okay. Tell me what happened.

Tropp: Nothing, honestly, nothing happened.

Officer Martinez: Nothing happened?

Tropp: What, um, yeah.

Officer Martinez: Ok. I see you have shorts on, okay. Were you in the water?

Tropp: Okay, so, if you want to start there, yes. We were on the river, right? Uh, swimming, and—we were minding our own business, swimming, in the river like everybody else there. And, uh, yeah. I, I mean, honestly there's—what, what am I being—really quick—what am I being detained for?

Other officer: We've gone over that.

Officer Martinez: Did my partner not tell you?

Tropp: I would like to ask Officer Martinez because—

Officer Martinez: You're being detained—Okay. I've, I've given you the opportunity to tell me your side of the story. I like everybody to—I like to have both sides. Okay? So basically, you tell me on the water there's—you're in the water. Right? You said there's a lot of people and that's where you stopped. Am I correct?

Tropp: You're correct, Officer Martinez.

Officer Martinez: Okay. You've been detained for a sexual offense.

5

Tropp: That, that's—there's, there's nothing that ever happened. That, that's false. No way.

Officer Martinez: Alright. Perfect.

Tropp: Absolutely, no. No.

Next, Officer Martinez asked, "What was your first name, bud?" Tropp repeated the question, emphasizing "bud." Another officer told Tropp that the word was just used as a figure of speech, and Tropp grinned during the explanation. Officer Martinez then repeated her question:

Officer Martinez: What's your first name? Okay, you know what? Stand up. Stand up. Stand up, put your hands behind your back.

Tropp: Why?

Officer Martinez: You're being [placed] under arrest.

Tropp: Whoa, whoa, whoa, whoa, whoa, whoa, whoa.

Officer Martinez: Don't, don't, don't fight. Don't fight.

Other officer: You're under arrest for sexual assault of a child.

Tropp: Oh my God. There's no way.

Other officer: Well, you know, we like to give people their—their chance, but man, you don't want to cooperate, you're scared to give a story, so here we are.

Officers handcuffed Tropp, who said, "Oh my gosh. Y'all, this is wrong." Later, as he was being seated in a patrol car, he said, "This is ridiculous." Upon arrival at the jail, Tropp volunteered that he was "active military" and answered Officer Martinez's questions about his rank, superior officer, and the location of his military employer.

During the State's cross-examinations of Officer Martinez and Tropp, defense counsel objected that prosecutors improperly referenced Tropp's silence and infringed on his

6

right against self-incrimination.  The prosecutors' references to what Tropp did not say to police at the scene included:

- asking Officer Martinez if the video showed that Tropp "refused to provide a statement" and asking her to confirm that Tropp "was given the opportunity" to do so;

- asking Officer Martinez, "And so how did your conversation with the defendant go?"

- asking Officer Martinez, "[W]hen you were talking to [Tropp], you asked him what had happened . . . so what was his response to you?"

- asking Officer Martinez, "Was [Tropp] giving you his side of the story?"

- asking Officer Martinez, "And so ultimately, were you able to really get a statement from the defendant on that day?"

- asking Tropp, "Did you tell . . . law enforcement at all about this water rescue?"

- asking Tropp, "And then law enforcement gave you the opportunity to explain; correct?"

- asking Tropp, "And so you agree with me that according to what you just told us about your training and experience, at that point you should have let law enforcement know, hey, that girl is intoxicated?" and

- asking Tropp, "And again, no mention of this water rescue [to the officers during his videotaped questioning]?"

Additionally, during closing argument, a prosecutor told the jury that when Tropp said to law enforcement that he did not do anything or touch anybody, he did not provide any "clarification" or "relaying information."  Defense counsel objected that the prosecutor's argument was a comment on Tropp's right against self-incrimination, and the prosecutor responded that the video showed that Tropp "was Mirandized."  The district court noted, "[H]e can reinvoke his right [to remain silent] and it cannot be used against him."  Contradicting the court, the prosecutor told the jury, "It certainly can."  The district court instructed the jury to disregard that remark.

7

**Post-trial motions and orders**

On April 4, 2023, while in open court, the district court suspended Tropp's sentence. Thus, Tropp's deadline to file any motion for new trial was 30 days later, May 4, 2023.[5] *See* Tex. R. App. P. 21.4(a) (providing 30-day deadline for filing new-trial motion that begins on date trial court imposes or suspends sentence in open court). On the day his sentence was suspended, Tropp timely filed his first motion for new trial. The only ground alleged in this first motion was that during trial prosecutors repeatedly referenced Tropp's silence, including closing argument about what jurors "did not hear" from him, which Tropp argued was a violation of his Fifth Amendment privilege against self-incrimination. The State's response to the new-trial motion asserted, among other things, that Tropp is estopped from complaining about the prosecutors' references to what he did not tell police at the scene because defense counsel introduced that video evidence.

During the new-trial hearing, Tropp argued that the State's assertion about introduction of the video being the defense's fault would support a new trial on another ground, ineffective assistance of counsel. The State denied that it was faulting the defense and reiterated that under its estoppel argument, it had the ability to use or cross-examine with evidence that the

---

[5] Both parties miscalculate the deadline for filing a motion for new trial. *See* Tex. R. App. P. 21.4(a). The State incorrectly asserts that the 30-day period started March 31, 2023, after Tropp's conviction by the jury. Tropp incorrectly asserts that the 30-day period automatically restarted June 15, 2023, when the case was restored to its pretrial position by the new-trial order. *See Rubio v. State*, 638 S.W.3d 693, 703 (Tex. Crim. App. 2022) (concluding that after unsuccessful motion for new trial, defendant may file amended new-trial motion with leave of court and "within the original 30-day period"); *id.* at n.15 ("[A] defendant may not file an amended motion for new trial *after* the 30-day time period expires, at least over the State's objection."); *see also* Tex. R. App. P. 21.4(b). Tropp fails to explain why a new-trial motion would be necessary if the case were in a pretrial position. *See Rodarte v. State*, 860 S.W.2d 108, 110 n.2 (Tex. Crim. App. 1993) (noting that in criminal cases, motion for new trial "by definition comes after a conviction, and at no other time").

defense put before the jury. Tropp clarified that his complaint was not about the evidence, but the prosecutors' conduct of trying to impeach him at trial with what he did not say at the scene. He argued that the prosecutors' references harmed him by causing jurors to draw inferences of guilt from his silence, and he referred to his investigator's affidavit summarizing post-trial interviews with some of the jurors. The district court sustained the State's hearsay objection to the investigator's affidavit but allowed filing of an amended motion for new trial and briefing on alleged juror misconduct and the effect of Texas Rule of Evidence 606 on the proof of such misconduct. *See* Tex. R. Evid. 606(b) (generally prohibiting jurors from testifying to any matter or statement occurring during jury's deliberations, or to effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to verdict).

On April 26, 2023, before any ruling, Tropp timely filed another motion for new trial, renewing the Fifth Amendment privilege ground and adding the grounds that his right to due process and his Sixth Amendment right to a fair and impartial jury were violated because an empaneled juror was dishonest during voir dire about her ability to set aside her bias based on her past experience with sexual assault.[6] *See id.* R. 21.4(b) (allowing filing of amended motions for new trial without leave of court within 30 days after date when sentence is imposed or suspended in open court and before any preceding new-trial motion is overruled). The State objected to any additional hearing on the "alleged juror issue" because, among other reasons, evidence of what jurors allegedly said about the "effect of anything" on their mental processes concerning the verdict is hearsay and admitting it violates Rule 606(b). No additional hearing occurred.

---

[6] The April 26 filing was captioned only as a "motion for new trial," not as an amended or supplemental motion.

### 1. First order granting new trial

The district court had 75 days after April 4, 2023—when it suspended Tropp's sentence in open court—to issue its ruling on the motion for new trial. *See id.* R. 21.8(a) (providing 75-day deadline for trial court's ruling on motion for new trial, which begins after date that court imposes or suspends sentence in open court). Thus, the deadline for the district court's ruling was Monday, June 19, 2023. *See id.*; *see also id.* R. 4.1 (stating that when last day of designated period falls on Saturday, Sunday, or legal holiday, period extends to end of next day that is not Saturday, Sunday, or legal holiday).

On May 25, 2023, the district court timely signed its first order granting a new trial to Tropp on the Fifth Amendment ground and including findings of fact and conclusions of law. *See id.* R. 21.8(b) (allowing inclusion of fact findings in court's ruling on new-trial motion). The order stated that a Sixth Amendment issue was also implicated because the invitation and opportunity for infringement of Tropp's Fifth Amendment privilege against self-incrimination was chiefly due to defense counsel's offer of otherwise inadmissible evidence. The order specified that the motion was granted "on the aforementioned grounds without regard to any analysis as to the sufficiency of the evidence." In its conclusions of law, the district court determined that errors by the prosecution and defense adversely affected Tropp's substantial rights, those errors likely contributed to his conviction, and the verdict rendered is contrary to the law and admissible evidence. *See id.* R. 21.3(h) (including "verdict contrary to the law and evidence" among grounds for new trial). The State filed objections to the district court's May 25 order and requested additional or amended findings and conclusions.

## 2. Amended order granting new trial

On June 8, 2023, the district court signed a timely amended order granting new trial, sustaining some of the State's objections, and including findings and conclusions. This order reiterated that the infringement of Tropp's Fifth Amendment privilege against self-incrimination implicated a Sixth Amendment issue and said that the defense argued the ineffective-assistance-of-counsel issue at the new-trial hearing without objection:

> The issue raised in the motion, of constitutional magnitude, was that of prosecutors infringing upon the Defendant's 5th Amendment privilege against self-incrimination. The invitation and opportunity to do so occurred chiefly due to the admission, by defense counsel, of evidence not otherwise admissible which gives rise to a 6th Amendment issue. Generally, the State's response to the Defendant's Motion for a New Trial noted that responsibility for the error raised in the motion rested with and was initiated by the defense.
>
> At the hearing on Defendant's Motion for New Trial, counsel for the defense noted the above-stated position of the State and argued, [inasmuch] as it was error initiated by the defense, he rendered ineffective assistance of counsel. Immediately prior to the hearing, the State filed a 39-page "Answer" . . . including its general objection to matters not raised in the Defendant's Motion . . . . Although the State did contemporaneously and specifically object, during the hearing, to the defense's attempt to orally assert and argue juror misconduct, it neither timely nor specifically objected to the unple[]d assertion and argument that counsel provided ineffective assistance of counsel. Rather, counsel for the State responded to the argument, distinguished fault from estoppel, attempted to legally justify repeated references to the Defendant's silence[,] and even noted the several times the Court had to instruct the jury to disregard. Only if one cedes error need one also rely on alleged efficacy of instructions to disregard.

Further, the amended order stated that the ruling excluded consideration of any post-trial affidavits or statements and was made without regard to the sufficiency of the evidence: the district court's "only concern [wa]s the process through which the jury verdict was obtained." The amended order clarified that it replaced the prior order:

11

The Order of May 25, 2023, is supplanted by this Amended Order for a New Trial. To the extent addressed herein, any such objection by the State is sustained. Otherwise, all other objections or relief sought by the State in its Request for Additional or Amended findings and conclusions are overruled or denied, respectively.

Although the June 8 "Amended Order Granting New Trial" replaced the court's prior order, the State appealed both the May 25 and June 8 new-trial orders on June 13, 2023, and filed its "supplemental" request for additional or amended findings and conclusions, along with its objections.[7] The State objected specifically to the absence of any ineffective-assistance allegations in Tropp's motions for new trial, argued that Tropp made no effort to establish the "deficient performance" or "prejudice" elements by a preponderance of the evidence as necessary for an ineffective-assistance complaint, and disputed that the ineffective-assistance issue was sufficiently "litigated" at the new-trial hearing.

The district court granted defense counsel's motion to withdraw, and on June 14, 2023, Tropp's new counsel filed a response to the State's request, noting that findings of fact and conclusions of law are not required in connection with a ruling on a motion for new trial. *See* Tex. R. App. P. 21.8(b); *Thomas v. State*, 445 S.W.3d 201, 214-15 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd); *Lucero v. State*, Nos. 03-21-00313—00315-CR, 2022 WL 16556833, at *5 (Tex. App.—Austin Oct. 31, 2022, no pet.) (mem. op., not designated for publication) ("[A] trial court is not required to make oral or written findings of fact when ruling on a motion for new trial, even upon request by the losing party."). Also on June 14, Tropp's new counsel filed a "supplemental" motion for new trial, supported by his unsworn declaration. The supplemental

---

[7] The State filed an additional notice of appeal on June 14, 2023, because of reported technical difficulties with the e-file service the preceding day.

motion presented an ineffective-assistance ground, argued that this ground and the Fifth Amendment issue are inextricable, and alleged that the ineffective-assistance issue was tried by consent at the new-trial hearing.[8] The unsworn declaration attached to the supplemental motion alleged that defense counsel was ineffective because he facilitated the State's infringement of Tropp's right to remain silent, offered the arrest video into evidence that would have been inadmissible if the State had offered it, and failed to object consistently and request a mistrial in response to the State's Fifth Amendment violation, and that this deficient performance prejudiced Tropp's defense.

### 3. Order with conclusions of law replacing prior findings and conclusions

The district court signed an order on June 16, 2023, striking all its prior findings of fact and conclusions of law. *Cf. Cueva v. State*, 339 S.W.3d 839, 855 (Tex. App.—Corpus Christi-Edinburg 2011, pet. ref'd) (concluding that "rule 21 does not require the trial court to make its findings within the same seventy-five-day period it has to rule on the motion for new trial"); *see Ex parte Evans*, 964 S.W.2d 643, 645 (Tex. Crim. App. 1998) (indicating that trial court signed findings of fact and conclusions of law recommending grant of habeas relief on July 21, 1997, but rescinded its initial findings more than 30 days later on August 29, 1997). Tropp's new counsel then filed a request that the district court enter only certain conclusions of law—which were "gleaned from" the findings and conclusions struck from the district court's amended order granting new trial—to assist with appellate review of the district court's reasoning. The State opposed this request; responded to Tropp's supplemental motion for new trial; and filed its "second supplemental" request for additional or amended findings and

---

[8] The next day, Tropp's new counsel filed a corrected, supplemental motion for new trial correcting the date on his verification.

13

conclusions, along with its objections. Specifically, the State objected to the untimely amendment of Tropp's motion for new trial and asserted that no new arguments or evidentiary grounds could be raised.

On June 20, 2023, the district court signed an order stating its conclusions of law, denying the State's request for additional or amended findings, and denying and overruling all remaining requests and objections.[9] More than a week later, the State filed its "third supplemental" objections and request for additional or amended findings and conclusions. *See Cueva*, 339 S.W.3d at 855. This time, the State said that because the appellate record was filed on June 29, 2023, the district court could not act on the State's most recent request for findings and conclusions unless the appeal was abated. *See* Tex. R. App. P. 25.2(g) ("Once the record has been filed in the appellate court, all further proceedings in the trial court—except as provided otherwise by law or by these rules—will be suspended until the trial court receives the appellate-court mandate."). The State asserted that it was incorporating by reference each of its prior filings, arguments, and objections but objected specifically to the absence of evidence establishing the requisite "deficient performance" or "prejudice" elements of an ineffective-assistance complaint and again disputed that the ineffective-assistance issue was "tried by consent" at the hearing. No further orders were signed.

---

[9] This order reiterated that although the district court viewed the verdict as contrary to the law and admissible evidence, "these conclusions bear not on the sufficiency of the evidence."

14

**DISCUSSION**

**Standard of review**

We review a trial court's ruling on a motion for new trial under an abuse-of-discretion standard. *State v. Gutierrez*, 541 S.W.3d 91, 98 (Tex. Crim. App. 2017). The court abuses its discretion only if its ruling is not supported by any reasonable view of the record. *Id.* When deciding whether a trial court erred in granting a new-trial motion, we view the evidence in the light most favorable to the court's ruling; give almost total deference to the court's findings of historical fact; and, if there are no findings, imply findings necessary to support the ruling if they are reasonable and supported by the record. *Id.*

"The trial court cannot grant a new trial just because it personally believes that the defendant is innocent or received a raw deal." *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). "Granting a new trial for a 'non-legal or legally invalid reason is an abuse of discretion.'" *State v. Arizmendi*, 519 S.W.3d 143, 148 (Tex. Crim. App. 2017) (quoting *State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007)). There is generally no abuse of discretion in granting a new trial if the defendant (1) articulated a valid claim in the motion, (2) produced evidence or pointed to record evidence that substantiated his claim, and (3) showed prejudice under applicable harmless error standards. *Id.*

"A trial judge has discretion to grant or deny a motion for new trial 'in the interest of justice,' but 'justice' means in accordance with the law." *Herndon*, 215 S.W.3d at 907. "In the interest of justice" is not an independent basis for granting a new trial in criminal cases. *See State v. Thomas*, 428 S.W.3d 99, 105 (Tex. Crim. App. 2014); *see also Arizmendi*, 519 S.W.3d at 161 (Newell, J., concurring) (noting that "'interest of justice' is not a legal claim unto itself").

15

Thus, "the trial court does not have discretion to grant a new trial unless the defendant shows that he is entitled to one under the law." *Herndon*, 215 S.W.3d at 907.

A defendant's motion is a prerequisite for the trial court to grant a new trial; the court may not do so on its own motion. *State v. Zalman*, 400 S.W.3d 590, 593 (Tex. Crim. App. 2013); *Zaragosa v. State*, 588 S.W.2d 322, 326-27 (Tex. Crim. App. 1979); *State v. Gant*, No. 03-23-00329-CR, 2025 WL 411679, at *3 (Tex. App.—Austin Feb. 6, 2025, pet. filed). A defendant must specifically identify the bases of his claims in a motion for new trial to give the "[trial] court enough notice to prepare for the hearing and make informed rulings and to allow the State enough information to prepare a rebutting argument." *Zalman*, 400 S.W.3d at 593-94; *Gant*, 2025 WL 411679, at *3. "[I]t is error for the trial court to rule on an untimely amendment over a proper objection." *Zalman*, 400 S.W.3d at 595 (concluding that trial court abused its discretion by granting new trial based on argument at hearing about improperly admitted evidence when motion challenged only sufficiency of evidence); *Gant*, 2025 WL 411679, at *4.

Tropp's motions for new trial collectively raised three grounds, complaining of (1) prosecutors' references during trial to his silence, (2) an empaneled juror's dishonesty during voir dire about her ability to set aside her bias, and (3) ineffective assistance of counsel. However, only the first two grounds were timely raised.

**Ineffective-assistance issue in supplemental motion for new trial was untimely**

Rule 21 of the Texas Rules of Appellate Procedure governs motions for new trial in criminal cases. A defendant seeking a new trial must file that motion within 30 days of the date that sentence was imposed or suspended in open court. Tex. R. App. P. 21.4(a). The Court of Criminal Appeals has recognized that Rule 21.4(a) "absolutely and explicitly prohibits a

16

defendant from filing a motion for new trial beyond 30 days after sentencing." *Rubio v. State*, 638 S.W.3d 693, 700 (Tex. Crim. App. 2022). But "if the State does not object, a trial court does not err to rule on an untimely amendment." *Id.* at 697; *see Gant*, 2025 WL 411679, at *4. And "if an original motion for new trial is overruled, a defendant may file an amended motion for new trial within the original 30-day period—so long as the trial court grants him leave of court to do so." *Id.* at 703; *see* Tex. R. App. P. 21.4(b).

The district court suspended Tropp's sentence in open court on April 4, 2023, meaning that his deadline to file a motion for new trial was 30 days later, on May 4, 2023. *See* Tex. R. App. P. 21.4(a). Tropp did not seek leave to amend his motion for new trial within 30 days after his sentencing, and his prior motions for new trial were not overruled. His "supplemental" motion for new trial filed on June 14, 2023, was untimely. This was the first written motion that raised the Sixth Amendment ineffective-assistance ground, and the State objected to the motion as an untimely attempted amendment of Tropp's motion for new trial. *See Rubio*, 638 S.W.3d at 703 n.15 ("[A] defendant may not file an amended motion for new trial *after* the 30-day time period expires, at least over the State's objection."). To the extent that this untimely supplemental motion raising the ineffective-assistance ground constituted an amendment of Tropp's motion for new trial, it was improper for the district court to consider it.

**Ineffective-assistance issue was not raised in timely motion and was not tried by consent**

The State challenges the amended order granting new trial and the conclusions of law that fault the State for not objecting to the unpled ineffective-assistance issue, which the district court concluded was tried by consent at the new-trial hearing. *See* Tex. R. Civ. P. 67

17

(stating that when issues not raised by the pleadings are tried by express or implied consent of the parties, they are treated in all respects as if they had been raised in the pleadings).

A trial court has the discretion, but not the obligation, to address new issues at a motion for new trial hearing, so long as the State does not object. *Clarke v. State*, 270 S.W.3d 573, 574, 580-81 (Tex. Crim. App. 2008); *Gant*, 2025 WL 411679, at \*4. In *Clarke*, the defendant filed a motion for new trial asserting inaccuracies in the presentence investigation report. *Clarke*, 270 S.W.3d at 576; *Gant*, 2025 WL 411679, at \*4. At the new-trial hearing, Clarke raised a prosecutorial-misconduct claim. *Clarke*, 270 S.W.3d at 576; *Gant*, 2025 WL 411679, at \*4. The State did not object that Clarke had enlarged or changed the legal basis of the motion; instead, it stood mute. *Clarke*, 270 S.W.3d at 576; *Gant*, 2025 WL 411679, at \*4. The Court of Criminal Appeals held that the trial court had the authority, but not the obligation, to consider the prosecutorial-misconduct claim given the State's failure to object. *Clarke*, 270 S.W.3d at 580-81; *Gant*, 2025 WL 411679, at \*4.

Here, during the new-trial hearing, the only reference to the unpled ineffective-assistance issue was this argument by defense counsel:

> Let's say [the State's argument]'s true. We introduced the video which created an inference of guilt in the jury's mind for our client. Now, that would lead to a conclusion, a very specific one, right, that we were ineffective at trial, which coincidentally is also grounds for a motion for new trial. So[,] assuming that argument is correct, they literally argued into a motion for new trial being granted. Maybe we were ineffective. We haven't alleged those grounds. But if that's the State's contention and the Court's—the Court agrees we were ineffective, we'll certainly take a new trial on those grounds as well. I don't think the State can claim, you know, surprise or lack of notice. They're the one[s] who made the allegation.

The State denied that it was faulting the defense and reiterated that under its estoppel argument, it had the ability to use or cross-examine with evidence that the defense put before the jury:

> And the[ ] defense wants to say that we're trying to say it's their fault. That's not what estoppel means. What estoppel means is that when you put this evidence— you put this evidence in. You put it before the jury. And then to argue that the State doesn't have the ability to cross-examine or to use that evidence is absurd because it was put before the jury. If you follow that line—if you follow what they're saying, then it would be like, oh, defense, put in whatever you want. The State can't question you on any of it. That's not what estoppel is.

Additionally, when the district court issued its orders granting a new trial and stated in its conclusions of law that the ineffective-assistance issue was tried by consent, the State objected that the unpled issue did not provide a basis for granting a new trial.[10] "A trial court abuses its discretion if it grants a motion for new trial on a new issue (regardless of who raises the issue), at least when the State objects." *Gant*, 2025 WL 411679, at *6; *see Clarke*, 270 S.W.3d at 580-81. Because the State did not stand mute but objected to the unpled and untimely ineffective-assistance issue, the order granting a new trial cannot be sustained on this basis.

---

[10] Alternatively, the district court concluded that the unpled Sixth Amendment ineffective-assistance issue and the pleaded Fifth Amendment privilege issue are "inextricably intertwined" because if defense counsel had not offered the video evidence and advised Tropp to testify, prosecutors would have been unable to use the video while cross-examining Officer Martinez and when trying to impeach Tropp with what he did not tell police. We note that Tropp did not make this argument in either of his timely motions for new trial. The amended order granting new trial may not be sustained on this basis. *See State v. Zalman*, 400 S.W.3d 590, 593 (Tex. Crim. App. 2013) (noting that defendant's motion is prerequisite for trial court to grant new trial and that court may not do so on its own motion).

19

Tropp asserts that his supplemental and corrected motions for new trial raising the ineffective-assistance issue were timely filed because (1) his sentence was not suspended until June 14, 2023, when the district court signed the judgment of conviction,[11] and (2) the 30-day period for filing those motions restarted on May 25, 2023, when the district court signed the first order granting a new trial, thereby "restor[ing] the case to its position before the former trial" under Texas Rule of Appellate Procedure 21.9(b). He also asserts that the district court had inherent authority to grant a new trial for ineffective assistance of counsel (and for prosecutorial misconduct) even without a motion raising that ground. All these assertions are incorrect.

A defendant may file a motion for new trial before, but not later than 30 days after, the date when the trial court imposes or suspends sentence in open court. Tex. R. App. P. 21.4(a). In criminal cases, the time to file a motion for new trial begins running when the sentence is imposed or suspended, even if the judgment of conviction is not signed until later. *See, e.g.*, *Rodarte v. State*, 860 S.W.2d 108, 110 n.2 (Tex. Crim. App. 1993) (noting that in criminal cases any motion for new trial comes after conviction); *Perez v. State*, 113 S.W.3d 819, 835 (Tex. App.—Austin 2003, pet. ref'd), *overruled on other grounds by Taylor v. State*, 268 S.W.3d 571, 587 (Tex. Crim. App. 2008). Because Tropp's 30-day deadline for filing a motion for new trial began on the date his sentence was suspended in open court—April 4, 2023—not when the judgment of conviction was signed, his supplemental and corrected motions for new trial filed on June 14 and 15, 2023, were untimely. *See* Tex. R. App. P. 21.4(a).

Further, no Texas case has held that when a trial court grants a new trial, the prevailing defendant receives an additional 30 days to file more motions for new trial. The

---

[11] Tropp's brief mistakenly says that the judgment was signed June 15, 2023. That is the date the judgment was filed, not signed.

20

authorities Tropp cites for this assertion say nothing about amended motions for new trial. *Cf.* Tex. R. App. P. 21.9(b) (stating that "granting a new trial restores the case to its position before the former trial, including, at any party's option, arraignment or pretrial proceedings initiated by that party"); *Kirk v. State*, 454 S.W.3d 511, 514-15 (Tex. Crim. App. 2015) (concluding that there is no time limit on trial court's power to rescind its grant of new trial); *Ex parte Nickerson*, 893 S.W.2d 546, 548 (Tex. Crim. App. 1995) (concluding that habeas applicant's sentence in second conviction should have begun when reversal of his preceding conviction became final).

Lastly, Tropp's assertion that the district court had inherent authority to grant a new trial for ineffective assistance, without a motion raising that ground, is contrary to precedents from the Court of Criminal Appeals and this Court expressly requiring a motion. *See Zalman*, 400 S.W.3d at 593 ("Such a motion [for new trial] is a prerequisite for the trial court to grant a new trial; the court may not do so on its own motion."); *Zaragosa*, 588 S.W.2d at 326-27 ("[A] motion for new trial in a criminal case may be granted only on the timely made motion of a defendant and the trial court has no authority to grant a new trial on its own motion."); *Gant*, 2025 WL 411679, at *4 ("A trial court does not have the discretion to sua sponte grant a new trial."). Tropp admits that he "has found no cases" addressing a trial court's use of its inherent authority as a remedy for ineffective assistance of counsel.

The ineffective-assistance issue was not raised in any timely motion and could not be addressed by the district court sua sponte, so the grant of a new trial to Tropp based on ineffective assistance of counsel cannot be sustained. We proceed to address the State's issues challenging the grounds in the new-trial motions that Tropp timely filed.

21

**Insufficient evidence of alleged juror misconduct**

The State challenges the amended order granting new trial to the extent that it was based on Tropp's complaints that he did not receive a fair trial or due process in violation of the Sixth Amendment because an empaneled juror "lied to the court" during voir dire about her ability to set aside her past experience with sexual assault. The State objects that these complaints relied on inadmissible hearsay, as the district court initially agreed by sustaining the State's hearsay objection at the hearing.[12]

Tropp's motion alleged juror misconduct and relied on the affidavit of a private investigator who interviewed 4 jurors after trial. This included one who disclosed during voir dire her past experience with sexual assault. She was not struck for cause because she agreed that she could "set that aside." When the investigator asked "if there were any outside influences that came to bear on her deliberations," he recalled her saying that "'being a victim of sexual assault' and having a young daughter put her in a 'different position' and that she had bias."

Relying on *Salazar v. State*, Tropp argued that this juror "withheld material information implicating the Sixth Amendment because the defense was denied the opportunity to exercise its challenges, thus hampering its selection of a disinterested and impartial jury." *Cf.* 562 S.W.2d 480, 481-82 (Tex. Crim. App. 1978) (remanding case for new trial based on juror's

---

[12] Although the amended order does not grant a new trial on any juror-misconduct basis, and the order says that the district court "specifically excluded any consideration of any and all post-trial affidavits or statements," the State addresses this issue because on June 15 the district court struck all its prior findings and conclusions, and Tropp filed a timely motion for new trial that included this ground. *See State v. Sandoval*, 842 S.W.2d 782, 785 (Tex. App.—Corpus Christi-Edinburg 1992, pet. ref'd) (holding that State "must challenge every ground raised in the [defendant's] motions [to dismiss charging instruments] to preserve its right to appellate review); *see also State v. Hoskins*, No. 05-13-00416-CR, 2014 WL 4090129, at *2 (Tex. App.—Dallas Aug. 19, 2014, no pet.) (mem. op., not designated for publication) ("An appellant, whether the State or the defendant, must challenge all independent bases or grounds that fully support a judgment or appealable order.").

acknowledgment to trial judge that he had given false information during voir dire by denying any prior involvement in criminal case; juror had witnessed his daughter's sexual assault); *see also Von January v. State*, 576 S.W.2d 43, 44 (Tex. Crim. App. 1978) (remanding case for new trial based on juror's failure to respond when asked whether any prospective jurors knew members of deceased victim's family; juror was well-acquainted with them). Tropp's motion noted that an aspect of his Sixth Amendment right is the opportunity to conduct a voir dire adequate "to identify unqualified jurors" and argued that information obtained after trial about this juror "concerns [her] ability to even serve on the jury."

Jury-misconduct allegations require supporting evidence to warrant a new trial. *State v. Gallien*, 631 S.W.3d 885, 896-97 (Tex. App.—Houston [1st Dist.] 2021, no pet.). The investigator's affidavit reciting what a juror told him after trial is hearsay. *See* Tex. R. Evid. 801 (defining hearsay as statement that declarant does not make while testifying at current trial or hearing and that party offers in evidence to prove truth of matter asserted). Hearsay is insufficient support for a new trial. *See id.* R. 802 (stating hearsay is generally inadmissible); *Martin v. State*, 823 S.W.2d 391, 393 (Tex. App.—Texarkana 1992, pet. ref'd) (concluding that counsel's affidavit with statements about what juror told him was inadmissible hearsay and insufficient to raise jury-misconduct issue); *Stowe v. State*, 745 S.W.2d 568, 569 (Tex. App.— Houston [1st Dist.] 1988, no writ) (noting that counsel's affidavit, stating that two jurors asked about verdict gave him answers "totally different" from ones they had given during voir dire, was hearsay); *accord Lomeli v. State*, No. 07-11-0244-CR, 2011 WL 6757419, at *2 (Tex. App.—Amarillo Dec. 22, 2011, no pet.) (mem. op., not designated for publication) (concluding that new-trial hearing was unnecessary when jury-misconduct complaint was supported only by

hearsay affidavit from private investigator). To the extent that the district court granted a new trial based on this insufficient evidence of juror misconduct, it was an abuse of its discretion.

**Tropp is estopped from complaining about prosecutors' use of evidence he introduced**

Lastly, we address the State's challenge to the district court's amended order granting a new trial to Tropp because prosecutors infringed on his Fifth Amendment privilege against self-incrimination. The State contends that Tropp is estopped from complaining about prosecutors' questions and arguments as to evidence that he introduced at trial. We agree.

In both his timely motions for new trial, Tropp complains that prosecutors repeatedly referenced his silence during a custodial interrogation, engaged in "*Doyle* violations" by using his silence to impeach the explanation he offered at trial, and created an inference of guilt in the jurors' minds that contributed to their verdict. *See* 426 U.S. at 617-18. In *Doyle*, the prosecutor sought to impeach a defendant's exculpatory story, offered for the first time at trial, by cross-examining him about his "post-arrest silence," meaning his failure to have told that story to police after receiving *Miranda* warnings. *Id.* at 611, 616. The Supreme Court held that "the use for impeachment purposes of [defendant]'s silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." *Id.* at 619.

However, the complaints in the new-trial motions concern prosecutors' questions and arguments from the video evidence that Tropp introduced. "As a general proposition, when a party introduces matters into evidence, he invites the other side to reply to that evidence." *Wheeler v. State*, 67 S.W.3d 879, 885 n.13 (Tex. Crim. App. 2002); *Blondett v. State*, 921 S.W.2d 469, 474 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (noting that defense

24

counsel "opened the door" to State's discussion of co-conspirator's confession by asking officer to discuss evidence used as basis for defendant's arrest). By introducing the video depicting events on the day of his arrest, Tropp opened the door to questions and arguments from that evidence, and he is estopped from complaining about its use. *See Bell v. State*, 867 S.W.2d 958, 962 (Tex. App.—Waco 1994, no writ) (noting that "by trying to shore up his defense strategy through questions about his post-arrest statements to the police, [defendant] 'opened the door' to the admission of his post-arrest silence").

In sum, we conclude that no reasonable view of this record supports the amended order granting a new trial on the bases specified in that order and raised in Tropp's timely filed motions. *See Gutierrez*, 541 S.W.3d at 98. We sustain the State's issue contending that Tropp did not establish his entitlement to a new trial on the bases in his timely motions for new trial.[13]

## CONCLUSION

We vacate the district court's June 8, 2023 "Amended Order Granting New Trial"; reinstate the district court's April 4, 2023 "Judgment of Conviction by Jury"; and remand this cause to the district court for further proceedings consistent with this opinion.[14]

_____

Darlene Byrne, Chief Justice

---

[13] To the extent that the "prosecutorial misconduct" referenced in the district court's amended order granting new trial does not refer to the prosecutors' references to Tropp's silence during police questioning but rather to the prosecutor's remark during closing argument that contradicted the court, we note that Tropp did not raise that as an independent ground in either of his timely motions for new trial. The amended order granting new trial may not be sustained on that unpled basis. *See Zalman*, 400 S.W.3d at 593 (noting that defendant's motion is prerequisite for trial court to grant new trial and that court may not do so on its own motion).

[14] The record reflects that only the State filed a notice of appeal.

25

Before Chief Justice Byrne, Justices Triana and Kelly

Vacated and Remanded

Filed:   May 21, 2025

Do Not Publish